**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Hector G.P.R.,

Petitioner,

v.

Warden of the Freeborn County Adult Detention Center, The; Secretary of Homeland Security, The; Director of U.S. Immigration and Customs Enforcement, The; Attorney General of the United States, The,

Respondents.

Case No. 26-cv-3048 (NEB/DLM)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Petitioner Hector G.P.R.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) Hector G.P.R. alleges that his immigration detention violates federal law, as well as the Fourth Amendment's prohibition against warrantless arrest, and the Fifth Amendment's Due Process Clause. (*See generally id*.) Respondents, for their part, contend that Petitioner's arrest and detention comply with federal law and therefore, he is not entitled to habeas relief. (*See generally* Doc. 7.) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The undersigned respectfully recommends granting Hector G.P.R.'s Petition, as explained more fully described below.

## BACKGROUND

Hector G.P.R. is 43 years old and a native and citizen of Mexico. (Docs. 1 ¶ 1; 8-3 at 1.) He has resided in the United States since 1999 and has lived in this country continuously for 27 years. (Doc. 1 ¶¶ 1, 14.) Hector G.P.R. has no criminal history and has maintained full-time employment. (*Id.* ¶ 15; *see also* Doc. 8-3 at 3.) He also helps care for his elderly mother. (Doc. 1 ¶ 16.)

Hector G.P.R. represents in his petition that on June 3, 2026, he was "traveling in a work van with his crew" to a job site when agents with Immigration and Customs Enforcement ("ICE") "stopped that van and detained the entire crew" without warning. (*Id.* ¶¶ 18, 19.) According to Hector G.P.R., ICE "did not posses an arrest warrant or a deportation order for Petitioner." (*Id.* ¶ 20.) He was then taken to the Freeborn County Adult Detention Center in Albert Lea, Minnesota, where he remains in custody. (*Id.* ¶ 23.)

In response to Hector G.P.R.'s petition, ICE Deportation Officer ("DO") William Robinson provided a declaration on behalf of Respondents. (Doc. 8.) DO Robinson asserts that on June 3, 2026, DO Rojo, a different ICE officer, was driving through "Redwing,"[1] Minnesota, when he stopped two vehicles (a white van and a white Hyundai) on the side of the road. (*Id.* ¶¶ 6, 7.) Ultimately, according to Respondents, each and every occupant of the two vehicles—including Hector G.P.R.—voluntarily stated they were citizens and nationals of Mexico and acknowledged they had no legal visa, entry documents, or lawful basis to be in the United States. (*Id.* ¶ 7.) Respondents assert that "probable cause for the

[1] The Court assumes DO Rojo means Red Wing, Minnesota.

administrative arrest of all occupants from both vehicles was established through [each person's] independent, voluntary admissions of foreign nationality and lack of lawful immigration status, corroborated by physical foreign documentation and electronic records verification through the LESC." (*Id.*) ICE then took all the occupants, including Hector G.P.R., into "administrative custody," each person was served an I-200 administrative warrant, and then "transported to ICE/ERO in St. Paul, Minnesota for formal processing and the issuance of appropriate charging documents." (*Id.*)

Hector G.P.R. filed is habeas petition pro se on June 22, 2026. (Doc. 1.) He alleges that his arrest and detention violate the Fourth and Fifth Amendments, as well as federal law. As a result, Petitioner argues, he should be released immediately or afforded a bond hearing. Respondents, for their part, contend that Hector G.P.R.'s petition fails because his arrest was supported by a warrant, and he is detained under the mandatory detention provision found in 8 U.S.C. § 1225(b)(2), and he therefore lacks any statutory or constitutional right to be released from custody. (*See generally* Doc. 7.) On July 10, 2026, attorney Leopold Epee entered an appearance on behalf of Hector G.P.R., and requested and extension of Petitioner's reply deadline, which the Court granted. (Docs. 10, 11, 12.) Then on July 23, Petitioner's counsel filed a Letter to District Judge, informing the Court and Respondents that he would "not be making additional filings on behalf of Petitioner." (Doc. 13.) Accordingly, this matter is now fully briefed and ripe for Report and Recommendation.

## ANALYSIS

### I. HECTOR G.P.R.'S HABEAS PETITION SHOULD BE GRANTED.

The writ of habeas corpus is a procedure available to prisoners to create government accountability for unlawful detention. *See Peyton v. Rowe*, 391 U.S. 54, 58 (1968); *Ex parte McCardle*, 73 U.S. (6 Wall.) 318, 325-26 (1867). The right to habeas relief extends to "persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900-01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).) The petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

### A. Statutory Detention Authority.

Respondents contend that the Eighth Circuit's interpretation of 8 U.S.C. § 1225(b)(2)(A) in *Avila v. Bondi* requires the mandatory detention of any noncitizen present in the United States who has not been admitted, whether they have just arrived at the border or have been present in the interior of the country for some time. 170 F.4th 1128, 1137 (8th Cir. 2026). Hector G.P.R. does not address *Avila*, but he nonetheless argues that because he has been in the United States since 1999, he cannot be seeking admission and therefore his detention under § 1225(b)(2) is unlawful, and he is instead subject to detention under 8 U.S.C. § 1226(a). (Doc. 1 ¶ 25.)

Respondents assert that Hector G.P.R. as a noncitizen who has not been lawfully admitted, and is therefore an applicant for admission "whose legal status is governed by 8 U.S.C. § 1225" and "is subject to mandatory detention[.]" (Doc. 7 at 3.) The Court agrees

that under *Avila*, Respondents have statutory authority under § 1225(b)(2) to detain Hector G.P.R. But because statutory authority to detain does not itself resolve the petition, the Court proceeds to Petitioner's other claims.

**B. Hector G.P.R.'s Arrest Under 8 U.S.C. § 1357.**

Hector G.P.R. claims that he was arrested without a warrant in violation of the Fourth and Fifth Amendments, but the heart of his argument attacks the validity of his arrest under 8 U.S.C. § 1357(a)(2). "ICE may arrest a noncitizen without a warrant only when an officer has 'reason to believe' both that a noncitizen is in violation of the immigration laws and 'is likely to escape before a warrant can be obtained for his arrest.'" *Jorge Anibal P. P. v. Todd Blanche, Acting Att'y Gen., et al.*, No. 26-cv-3125 (LMP/LIB), 2026 WL 2017765, at *3 (D. Minn. July 13, 2026) (quoting 8 U.S.C. § 1357(a)(2)). So, says Hector G.P.R., because his warrantless arrest did not meet the requirements of § 1357(a)(2), it necessarily fails under the Fourth and Fifth Amendments.

Respondents have provided a Form I-200 administrative warrant that was issued and served to Hector G.P.R. on June 3, 2026, at the time of his roadside arrest in Prescott, Wisconsin. (Doc. 8-1 at 1.) They have also provided a Notice to Appear ("NTA") which was issued *after* Hector G.P.R.'s arrest, during his processing in Fort Snelling, Minnesota. (Doc. 8-2 at 1.) Respondents concede that this sequence is out of step with 8 C.F.R. § 236.1(b), the federal regulation which governs the apprehension, custody, and detention of noncitizens. The regulation requires that "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200,

Warrant of Arrest." *Id*. Because ICE issued the Form 1-200 warrant *before* issuing the NTA, Respondents agree that Petitioner's arrest must be analyzed under § 1357. (Doc. 7 at 8-9.)

Section 1357 permits an ICE officer to arrest a noncitizen who the officer has "reason to believe" is both in violation of immigration laws and "likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2).[2] Reason to believe "means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Hector G.P.R. contends that "ICE lacked any individualized basis to believe [he] was likely to escape" and his detention with a group of workers amounts to nothing more than a "dragnet seizure forbidden by the Fourth Amendment." (Doc. 1 ¶ 28.) Respondents disagree.

Based on the evidentiary record before it, the Court agrees with Respondents that ICE had reason to believe Hector G.P.R. was in violation of immigration laws when officers arrested him, based on his voluntary statement that he did not have lawful immigration status. (Doc. 8-3 at 2-3.) Respondents also take the position, now in their response to his petition, that ICE had reason to believe Hector G.P.R. was likely to escape because he was one of several "subjects" who "were in complete control of the vehicles and could have easily left the scene and never to be found again." (Doc. 7 at 10.) But there

[2] Although immigration officers are not required to issue a warrant in order to detain a noncitizen under 8 U.S.C. 1225(b)(2)(A), *see Muse v. Mullin*, No. 26-cv-4024-CJW-MAR, 2026 WL 1008532, at *2-3 (N.D. Iowa Apr. 14, 2026), warrantless arrests of noncitizens detained under § 1225(b)(2)(A) must nonetheless comply with the requirements of 8 U.S.C. § 1357(a)(2), *see id*; *Francisco M. A. v. Blanche*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026). Respondents do not contest this point.

are at least two problems with Respondents' position. First, Respondents interpret too broadly the "specific, limited circumstances" under which warrantless arrests should be conducted. *Arizona v. United States*, 567 U.S. 387, 410 (2012). Second, the evidence does not back up Respondents' after-the-fact assertion.

Courts have taken the phrase "likely to escape" to mean "likely to evade detention by immigration officers." *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026) (quoting *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006-07 (N.D. Ill. 2016)); *see also Jesus F. D. v. Mullin*, No. 26-cv-2486 (PJS/DTS), Doc. 10 at 8 (D. Minn. June 10, 2026) (interpreting "likely to escape" to mean "risk of flight"); *Campos v. United States*, 888 F.3d 724, 734-35 (5th Cir. 2018) (interpreting "likely to escape" as likely to "disappear before a warrant could be obtained"); *United States v. Khan*, 324 F. Supp. 2d 1177, 1187 (D. Colo. 2004). This analysis contemplates not just the likelihood that a person will be located at the scene of an encounter with ICE, but also the likelihood that ICE will be able arrest the person at "another clearly identifiable location." *Walther Ademir A. S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (quoting *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3417 (BAH), 2026 WL 1256234, at *10 (D.D.C. May 7, 2026)). The question, therefore, is not merely whether Hector G.P.R. was likely to flee from the roadside stop, but whether ICE would be able to locate him after obtaining a warrant for his arrest. *See Walther Ademir A. S.*, 2026 WL 1734906, at *3.

Now to Respondents' evidence. Respondents' declaration and exhibits show that ICE encountered two vehicles, a white van and a white Hyundai, with multiple occupants

on June 3, 2026. (Docs. 8 ¶¶ 6-7; 8-3 at 2-3.) But Respondents have presented no evidence that Hector G.P.R. was driving either vehicle or had access to any keys; nor is it even clear in which vehicle Hector G.P.R. was riding. (Docs. 8 ¶¶ 6-7; 8-3 at 2-3.) And while perhaps Hector G.P.R. *could* have fled the scene, that is only part of the inquiry. Here, the evidentiary record shows that Hector G.P.R., who has no criminal history, was forthcoming and honest with ICE about his immigration status and provided officers with his driver's license. (Doc. 8-3 at 3 ("The occupants presented documentation to the deputies, who then transferred the documents to [ICE officers] for immigration verification. The documents consisted of Minnesota identification cards and one Mexican voter registration card[]."), 4 (listing Hector G.P.R.'s driver's license number).) The evidence belies Respondents' suggestion that ICE had a reasonable belief that Hector G.P.R. would flee and never be found again. After all, with his identification in hand, ICE could have located Hector G.P.R. at a clearly identifiable location: the address on his driver's license. Moreover, based on the Form I-213, which states that Hector G.P.R. and the other "subjects" "were served I-200's with concurrence from SDDO Munoz," it is clear that ICE officers did not believe they were effecting a warrantless arrest, nor did they mention any belief that Hector G.P.R would likely escape. (*See* Docs. 8-3 at 3; 8-1.) As a result, the Court finds that Respondents have failed to establish probable cause for Hector G.P.R.'s arrest under 8 U.S.C. § 1357(a)(2). *See Vladimir G. v. Easterwood*, No. 26-cv-2971 (JMB/ECW), 2026 WL 1786418, at *3 (D. Minn. June 22, 2026). Hector G.P.R.'s arrest was therefore unlawful, and the Court recommends he be released immediately.

**C. Due Process.**

Although the Court recommends that Hector G.P.R.'s petition be granted based on his unlawful warrantless arrest, for the sake of completeness, the Court will also address whether his continued detention without a bond hearing violates the Fifth Amendment. The Court alternatively concludes that Hector G.P.R.'s ongoing detention without a bond hearing is also unlawful.

While *Avila* addressed a noncitizen's statutory rights under § 1225(b)(2)(A), it did not reach the question of a noncitizen's due process rights. 170 F.4th at 1140 & n.8 (Erickson, J., dissenting). Respondents assert that Hector G.P.R.'s due process rights do not require a bond hearing because Congress provided the applicable process in § 1225, and § 1225(b)(2)(A) requires detention when the applicant is not clearly and beyond doubt entitled to admission. According to Respondents neither procedural nor substantive due process permit the Court to "override Congress's substantive judgment that all applicants for admission must be detained" with a discretionary bond hearing. (Doc. 7 at 5.)

Noncitizens, such as Hector G.P.R. are entitled to Fifth Amendment due process of law. *Demore*, 538 U.S. at 523; *Sanchez-Valasco v. Holder*, 593 F.3d 733, 737 (8th Cir. 2010). Since *Avila*, many courts within this District have found that a noncitizen's detention under § 1225(b)(2) without an individualized bond hearing violates their rights under the Due Process Clause. *See, e.g.*, *Felipe S.P.* v. *Blanche, et al*., No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656, at *1 (D. Minn. July 2, 2026); *Jesus Alejandro G.A. v. Blanche et al*, No. 26-cv-1932 (LMP/ECW), 2026 WL 1383138, at *10 (D. Minn. May 18, 2026). Still, the law is not definitively settled, *see Brayam G. G. v. Easterwood*, No. 26-

cv-1985 (DMT/EMB), Doc. 22 at 3-4 (D. Minn. Apr. 15, 2026) (rejecting due process argument by habeas petitioner detained under Section 1225(b)(2)), so the issue deserves a closer look.

Respondents contend that under the Supreme Court's decision in *Demore v. Kim* and the Eighth Circuit's decision in *Banyee v. Garland*, "detention during deportation proceedings is constitutionally valid." (Doc. 7 at 7 (quoting *Banyee*, 115 F.4th 928, 931 (8th Cir. 2024); *Demore*, 538 U.S. 510, 523 (2003).) Thus, according to Respondents, Hector G.P.R.'s due process challenge to his mandatory detention under § 1225(b) must fail. But *Demore* and *Banyee* address challenges to mandatory detention under § 1226(c), not § 1225(b)(2). The distinction matters.

Section 1226(c)'s mandatory detention provisions apply to certain noncitizens who have committed listed criminal offenses, and to certain categories of inadmissible people. *Id*. § 1226(c)(1)(A)-(E). The Supreme Court thus held in *Demore*, that "Congress, justifiably concerned that deportable criminal [noncitizens] who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings" under § 1226(c). 538 U.S. at 513. Therefore, detaining such noncitizens for the time necessary to complete their removal, without an individualized determination of flight risk, did not violate the Due Process Clause. *Id*. at 522-31.

While *Demore* concluded that noncitizens could be constitutionally detained under § 1226(c), the *Banyee* court "grappled with whether a multi-factor reasonability test applies to constitutional challenges to the length of detention." *Felipe S.P.*, 2026 WL 1911656, at

*5. Looking to *Demore*, 538 U.S. at 528, and *Zadvydas*, 533 U.S. at 682, the Eighth Circuit found "[t]hese cases leave no room for a multi-factor 'reasonableness' test," and therefore, petitioner was not entitled to an individualized review. *Banyee*, 115 F.4th at 933-34. Such a balancing test was "unnecessary because *Zadvydas* and *Demore* did all the balancing that was necessary—based on those cases, noncitizens with criminal convictions detained under Section 1226(c) can be detained during the entirety of deportation proceedings." *Felipe S.P.*, 2026 WL 1911656, at *5 (citing *Banyee*, 115 F.4th at 933). Read in context, *Banyee's* statement that *Demore* and *Zadvydas* "leave no room for a multi-factor 'reasonableness' test," means that Banyee, who was detained under Section 1226(c), is not entitled to any *further* balancing[.]" *Id*. at *6 (citing *Banyee*, 115 F.4th at 933). This makes sense because Banyee's interests had been fully taken into consideration under *Demore* and *Zadvydas*. *Id*. The Eighth Circuit's decision in *Banyee*, addresses the constitutionality of the length of a noncitizen's detention under § 1226(c) pending removal. *Id*. It is not, therefore, as Respondents contend, a categorical bar to due process challenges to any noncitizen's detention pending removal proceedings. *Id*.

Nor does Hector G.P.R.'s status a person "seeking admission" necessarily limit his due process claim. Relying on *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), and *Landon v. Plasencia*, 459 U.S. 21 (1982), Respondents argue that "lawful admission" and "not physical entry" is the threshold barrier to lodge a due process claim. (Doc. 7 at 6-7.) In Respondents' view, until a person has been lawfully admitted, the only due process available "is whatever process is 'expressly conferred by Congress.'" (*Id*. at 6 (quoting *Thuraissigiam*, 591 U.S. at 138).) *Thuraissigiam* held that noncitizens detained

near the border have no constitutional right to review their expedited deportation orders. *Id*. at 117-18, 140. But this case is different. Hector G.P.R. does not challenge the reviewability of his removal, rather he contests the lawfulness of his detention without an individualized hearing. *See Felipe S.P.*, 2026 WL 1911656, at *6. Moreover, Hector G.P.R. was not detained near the border immediately upon entering the country. He has lived in the United States for nearly 30 years, and he was arrested in Minnesota. *See id*. (*comparing Thuraissigiam*, 591 U.S. 103 at 107 ("[A]liens who have established connections in this country have due process rights in deportation proceedings . . . ."), *with id.* at 140 (explaining that noncitizens "detained *shortly after* unlawful entry cannot be said to have 'effectuated an entry'")). To be sure, "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Id*. (quoting *Demore*, 538 U.S. at 522). But "noncitizens within the United States after entry, even illegal entry, are afforded 'additional rights and privileges' than those 'on the threshold of initial entry.'" *Id*. (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). *Thuraissigiam* therefore does not apply here. As a result, the Court proceeds to the merits of Hector G.P.R.'s due process claim.

To determine whether civil detention violates a person's Fifth Amendment Due Process rights, courts look to the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Felipe S.P.*, 2026 WL 1911656, at *7. Under *Mathews*, courts consider three factors: 1) "the private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards;" and 3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail. 424 U.S. at 335. Respondents argue that *Mathews* is the wrong framework against which to test Hector G.P.R.'s due process claim but offer no alternative. This Court therefore follows the now well-worn path of many federal courts in this District and around the country that have found *Mathews* the most useful test to apply when analyzing what process the government owes noncitizens detained during removal proceedings, including those detained under § 1225(b)(2). *Felipe S.P.*, 2026 WL 1911656, at *7. Although neither party addresses the individual factors set out in *Mathews*, the Court takes each in turn.

The Court finds that the first factor, the private interest affected by official action, favors Hector G.P.R. "The interest in being free from physical detention is the most elemental of liberty interests." *Manuel G. v. Blanche*, No. 26-cv -2385 (SRN/ECW), 2026 WL 1256358, at *4 (D. Minn. May 7, 2026) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004) (internal quotation omitted). Hector G.P.R. is currently detained in the Freeborn County Jail, where pretrial criminal detainees and those convicted of criminal offenses are also held. *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (stating that under the first *Mathews* factor, courts "consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration.") He also maintains a strong interest in remaining in the United States, where he has lived for nearly 30 years, maintains full-time employment, and cares for his elderly mother.

The second *Mathews* factor, the risk of erroneous deprivation, also favors Hector G.P.R. Here, courts assess whether the challenged procedure creates a risk of erroneous

deprivation of individuals' private rights and consider the degree to which alternative procedures could mitigate these risks. *Matthews*, 424 U.S. at 335; *Günaydin*, 784 F. Supp. 3d at 1187. Without addressing *Mathews*, Respondents claim that the individualized bond hearing Hector G.P.R. seeks is "merely the vehicle making [a] substantive determination about flight risk or dangerousness." (Doc. 7 at 5.) A determination that in Respondents' view is "irrelevant" under § 1225(b)(2)(A). (*Id*.)

Relying on *Connecticut Department of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003), Respondents argue that a bond hearing to assess Hector G.P.R.'s dangerousness or risk of flight would fail to change the fact that noncitizens who are applicants for admission "shall be detained" during removal proceedings. 8 U.S.C. § 1225(b)(2)(A). But that case is inapposite, as it involved a procedural due process challenge to Connecticut's post-conviction sex offender registry statute. 538 U.S. at 1162-63. In that context, the Supreme Court held that procedural due process required no pre-registration hearing to determine a person's current dangerousness because the statutory registration requirement depended on the previous conviction, not current dangerousness. *Id*. 1163-65 (stating that "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme"). This makes sense because, as the Court observed, those required to register had been afforded procedural due process in their underlying criminal proceedings leading to their convictions. *Id*. at 1164. ("As the DPS Website explains, the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest.") Here, Respondents assert authority to

detain Hector G.P.R. under § 1225(b)(2)(A), with no similar underlying proceeding providing him an opportunity to contest his detention.

Hector G.P.R.'s detention must "bear some reasonable relation to the purpose for which" he is detained. *Seling v. Young*, 531 U.S. 250, 265 (2001); *Zadvydas*, 533 U.S. at 690 (explaining that detention must be tied to its purpose). Although risk of flight or dangerousness may justify the government's detention of a noncitizen, Hector G.P.R. has been detained without any lever by which to challenge whether his detention serves those purposes. Section 1225(b)(2) provides Hector G.P.R. no procedure to contest whether he poses a risk of flight or danger. Nor has the government provided him with any individualized review as to the necessity of his detention, and there is no opportunity for a hearing to challenge his flight or security risk.

All this, even though his life circumstances bear directly on these risk factors. Hector G.P.R. has lived in the United States for nearly 30 years, is employed full time, has no criminal history, and cares for his elderly mother. Respondents have said no to any process by which he could raise these facts to contest the government's justification for depriving him of his liberty. "This poses a risk of erroneous deprivation that is furthered by Respondents' failure to make any argument that he would remain detained even if given a bond hearing." *Felipe S.P.*, 2026 WL 1911656, at *9 (quoting *Restrepo v. Jamison*, 823 F. Supp. 3d 529, 543 (E.D. Pa. 2026) ("Where, as here, the Government has not alleged circumstances that would indicate that [petitioner] poses a danger to the community or is a flight risk, the risk of an erroneous deprivation is higher.")). Hector G.P.R.'s detention must be reasonably tied to its intended purpose, and so his detention without any

individualized determination of his risk of flight or dangerousness "increases the likelihood of erroneous deprivation." *Id*. (collecting cases). The value of a bond hearing where Hector G.P.R. can raise these facts and the government can articulate its justification for his detention is therefore significant.

Finally, the Court finds that the third *Mathews* factor, the burden the government would bear in affording additional procedural safeguards, favors Hector G.P.R. as well. Respondents fail to articulate any burden that providing a bond hearing would place on the government. And as other courts have found, this Court finds that a bond hearing would not be particularly burdensome. *See Abdirashid H. M. v. Noem*, No. 25-cv-4779 (JRT/EMB), 2026 WL 127698, at *5 (D. Minn. Jan. 9, 2026) ("[A] bond hearing would impose minimal, if any, financial or administrative burden on Respondents.") In fact, before July 2025, the government gave noncitizens like Hector G.P.R. bond hearings. *See Jesus Alejandro G. A.*, 2026 WL 1383138, at *12. The Court finds therefore that Hector G.P.R.'s strong private interest outweighs any burden that Respondents may assert. At a bond hearing, an immigration judge will consider Hector G.P.R.'s circumstances alongside the government's interests in determining whether release is appropriate. As a result, a bond hearing will reduce the risk of erroneous deprivation of liberty without imposing significant burdens on Respondents.

## II. NO EVIDENTIARY HEARING IS REQUIRED.

An evidentiary hearing is appropriate only when material facts are in dispute. *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995). An evidentiary hearing is not required when a conclusion can be reached on the issue with the undisputed facts. *United States v. Winters*,

411 F.3d 967, 973 (8th Cir. 2005). This matter can be resolved based on the existing record, and thus the Court finds no evidentiary hearing is necessary.

## III. NOTICE ON OBJECTIONS.

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Given the expedited nature of these proceedings, the Court exercises its discretion to alter the standard timelines for Respondents to file objections to this Report and Recommendation. *See* Local Rule 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, unless the court sets a different deadline.") (emphasis added). Respondents must file any objection to this Report and Recommendation on or before **August 14, 2026**. Hector G.P.R. may file a response to any objections on or before **August 21, 2026**. *See* L.R. 72.2(b)(2).

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Hector G.P.R.'s Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED.**

2. Respondents be ordered to release Petitioner Hector G.P.R. from custody

   a. Immediately;

   b. Inside the State of Minnesota with at least 8 hours' notice to Petitioner's attorney; and

   c. With all of Petitioner's personal effects in Respondents' possession or control, including, but not limited to, his driver's license, immigration

paperwork, work authorization, cell phone, keys, clothing, personal effects.

3. In the alternative, Respondents be ordered to provide Hector G.P.R. with a bond hearing before an Immigration Judge in Minnesota within 7 days of the Court's Order on this Report and Recommendation.

4. To the extent that Hector G.P.R. seeks additional relief, the Petition should be **DENIED**.

Date: August 7, 2026

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge